## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| hhgregg, Inc., *et al.*, | : | Case No.: 17-01302-RLM-11 |
| Debtors. | : | (Jointly Administered) |
| | : | |

| | | |
|---|---|---|
| Electrolux Home Products, Inc. a Delaware Corporation, | : | |
| Plaintiff, | : | |
| v. | : | Adv. Pro. No.: 17-50098 |
| hhgregg, Inc., HHG Distributing LLC, Gregg Appliances, Inc., Wells Fargo, N.A., Hilco Merchant Resources, LLC, and Gordon Brothers Retail Partners, LLC, | : | |
| Defendants. | : | |

### DEFENDANTS hhgregg, INC., HHG DISTRIBUTING LLC, AND GREGG APPLIANCES, INC.'S ANSWER, SPECIFIC DEFENSES AND COUNTERCLAIM

Defendants hhgregg, Inc. ("hhgregg"), HHG Distributing LLC ("HHG Distributing"), and Gregg Appliances, Inc. ("Gregg Appliances") (each a "Debtor" and collectively, the "Debtors" or "Defendants") file this Answer (the "Answer") to the First Amended Complaint (Dkt. No. 72) of Electrolux Home Products, Inc. ("Electrolux" or "Plaintiff") as well as Debtors' Counterclaim for declaratory judgment, breach of contract and avoidance and recovery of preferences.[1]    To the extent any allegations in the Amended Complaint are not expressly admitted, they are denied.    Any averment by Debtors that it lacks knowledge or information sufficient to form a belief about the truth of an allegation shall have the effect of a denial.

---

[1] Unless stated otherwise herein, all undefined capitalized terms appearing in this document shall have the meanings ascribed to such terms in the Amended Complaint.

## JURISDICTION AND VENUE

### ALLEGATION NO. 1:

This Court has exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

### RESPONSE TO ALLEGATION NO. 1:

Debtors state that the allegations in paragraph 1 are contentions of law for which no response is required.

### ALLEGATION NO. 2:

This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (N), and (0).

### RESPONSE TO ALLEGATION NO. 2:

Debtors admit that this proceeding is a core proceeding.

### ALLEGATION NO. 3:

This is an action for declaratory relief against the Defendants pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. §§ 105 and 541, Rule 57 of the Federal Rules of Civil Procedure, and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure

### RESPONSE TO ALLEGATION NO. 3:

Debtors state that the allegations in paragraph 3 are contentions of law for which no response is required.

### ALLEGATION NO. 4:

Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

### RESPONSE TO ALLEGATION NO. 4:

Admitted.

### ALLEGATION NO. 5:

In accordance with the Federal Rule of Bankruptcy Procedure 7012(b), the Plaintiff consents to entry of final orders and judgment by the Court in connection with the claims asserted herein to the extent that it is later determined that the Court, absent consent of the Plaintiff, cannot enter

final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## RESPONSE TO ALLEGATION NO. 5:

In accordance with Federal Rule of Bankruptcy Procedure 7012(b), Debtors also consent to the

issuance of final orders and judgment by the Court.

### THE PARTIES

## ALLEGATION NO. 6:

Electrolux is a Delaware corporation with its principal place of business in Charlotte, North Carolina. Electrolux is a party in interest within the meaning of 11 U.S.C. § 1109(b) and therefore has the requisite standing to assert these claims against the Defendants.

## RESPONSE TO ALLEGATION NO. 6:

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 6;

therefore, to the extent a response is required, Debtors deny the allegations in paragraph 6.

## ALLEGATION NO. 7:

Gregg, hhgregg, Inc., and HHG Distributing LLC are the Debtors herein and are organized under the laws of the State of Indiana.

## RESPONSE TO ALLEGATION NO. 7:

Admitted.

## ALLEGATION NO. 8:

Wells Fargo is a national association bank with its principal place of business in Sioux Falls, South Dakota. Wells Fargo is a defendant herein in its capacity as the Administrative Agent and the Collateral Agent for the Prepetition Credit Agreement (as defined below) and for the DIP Credit Agreement (as defined below).

## RESPONSE TO ALLEGATION NO. 8:

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 8;

therefore, to the extent a response is required, Debtors deny the allegations in paragraph 8.

**ALLEGATION NO. 9:**

Hilco is an Illinois limited liability company.

**RESPONSE TO ALLEGATION NO. 9:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 9;

therefore, to the extent a response is required, Debtors deny the allegations in paragraph 9.

**ALLEGATION NO. 10:**

Gordon Brothers is a Massachusetts limited liability company.

**RESPONSE TO ALLEGATION NO. 10:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

10; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 10.

**ALLEGATION NO. 11:**

A Committee of Unsecured Creditors was appointed by order of the Court on March 10, 2017
[Docket No. 118].

**RESPONSE TO ALLEGATION NO. 11:**

Admitted.

**FACTUAL BACKGROUND**

**A.  Commencement of the Bankruptcy Case**

**ALLEGATION NO. 12:**

On March 6, 2017, hhgregg, Inc., Gregg Appliances, Inc., and HHG Distributing LLC
(collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United
States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Southern
District of Indiana (the "Court"). These bankruptcy cases were administratively consolidated
under case no. 17-01302 (this "Case") by order of the Court entered on March 13, 2017 [Docket
No. 139].

**RESPONSE TO ALLEGATION NO. 12:**

Admitted.

**B. The Consignment Agreement**

**ALLEGATION NO. 13:**

Gregg, pursuant to a Consignment Agreement dated March 11, 2011 (the "Consignment Agreement"), received certain goods on consignment from Electrolux (the "Electrolux Consignment Inventory"). A copy of the Consignment Agreement is attached hereto as Exhibit A.

**RESPONSE TO ALLEGATION NO. 13:**

Debtors admit that Exhibit A to the Amended Complaint is a true and correct copy of the

Consignment Agreement between Gregg Appliances, Inc. ("Gregg") and the Plaintiff.  Debtors

admit that Gregg received goods from the Plaintiff pursuant to the Consignment Agreement.

Debtors further state that the Consignment Agreement speaks for itself and Debtors deny any

allegations in paragraph 13 to the extent they do not fully and accurately characterize the content

of the Consignment Agreement or otherwise seek to characterize the purpose of any given

provision of the Consignment Agreement.

**ALLEGATION NO. 14:**

The Electrolux Consignment Inventory primarily consists of branded appliances, including Electrolux, Electrolux ICON, Gibson, Kelvinator, Tappan, and Frigidaire brand refrigerators, freezers, clothes washers, clothes dryers, ranges, stoves, cook tops, dishwashers, and other kinds of household and commercial appliances.

**RESPONSE TO ALLEGATION NO. 14:**

Admitted.

**ALLEGATION NO. 15:**

Pursuant to the Consignment Agreement, Electrolux periodically delivered Electrolux Consignment Inventory to Gregg's store locations and distribution centers across the country, and all of the Electrolux Consignment Inventory was delivered to Gregg as consigned goods pursuant to the Consignment Agreement.

**RESPONSE TO ALLEGATION NO. 15:**

Debtors admit that Electrolux delivered inventory to the Debtors pursuant to the Consignment Agreement.  Debtors state that the remaining allegations of paragraph 15 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the remaining allegations in paragraph 15.

**ALLEGATION NO. 16:**

At all times during their consignment relationship, and as expressly provided in the Consignment Agreement, Gregg and Electrolux acknowledged and agreed that all right, title, and interest in and to all of the Electrolux Consignment Inventory remained with Electrolux and never transferred to Gregg.

**RESPONSE TO ALLEGATION NO. 16:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 16 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.  Debtors otherwise deny the allegations contained in paragraph 16.

**ALLEGATION NO. 17:**

The Consignment Agreement expressly provides with regard to title to the Electrolux Consignment Inventory and its proceeds:

> The Consignor shall at all times retain title to all Consigned Merchandise. Upon the sale of the Consigned Merchandise; title to the proceeds shall vest in and remain the property of the Consignor until the Consignor is paid in full pursuant to the terms of this Agreement. The Consignee agrees to hold the Consigned Merchandise in trust for the Consignor as Consignor's property, for the sole purpose of selling the Consigned Merchandise and the Consigned Merchandise shall only be sold by the Consignee in its ordinary course of business. The Consigned Merchandise shall at all times be subject to the direction and control of the Consignor, and upon demand by the Consignor, the Consignee shall return any unsold Consigned Merchandise to the Consignor. ¶ 2.

> In order to secure Consignor with respect to the Consigned Merchandise and any and all moneys due to the Consignor herein, the Consignee * * *[agrees] * * * to execute and/or permit to be filed any * * * documents * * *to perfect the Consignor's **ownership interest** in the Consigned Merchandise and the proceeds thereof. ¶ 5 *(emphasis added).*

**RESPONSE TO ALLEGATION NO. 17:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 17 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 18:**

The Consignment Agreement expressly provides with regard to identification and segregation of the Electrolux Consignment Inventory:

> The Consignment Merchandise shall be readily identifiable and distinguishable from the inventory owned by the Consignee. ¶ 1.

> The Consigned Merchandise shall remain free and clear of all liens, security interest, claims, and encumbrances. ¶ 3(e).

**RESPONSE TO ALLEGATION NO. 18:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 18 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 19:**

The Consignment Agreement further provides with regard to payment to Electrolux by Gregg:

> On every Tuesday (for all sales for the previous week ending Sunday), Consignee shall send a written report to Consignor setting forth the sales of Consigned Merchandise, by model and location (the "Report"). Within one (1) day from the date of each Report, Consignee shall make payment to Consignor, via Consignor's designated on-line payment system for Consignees, in an amount equal to the Consigned Merchandise Cost (as defined herein). As used herein, the term "Consigned Merchandise Cost" shall mean the sum of (i) the Consigned Merchandise prices as set by Consignor and (ii) shipping costs. The Consigned Merchandise Cost shall be at the current established price. ¶ 7(a).

> Within three (3) business days of the end of each calendar month, Consignee shall send a written report to Consignor summarizing the value of the unsold Consigned Merchandise in Consignee's possession by Location. In the event that Consignee's aggregate balance of

Consigned Merchandise is less than Consignee's aggregate open invoice balance as prepared by Consignor, or any items of Consigned Merchandise are found missing, Consignee shall immediately pay Consignor, via Consignor's designated on-line payment system, the Consigned Merchandise Cost for such shortfall within seven (7) days of the date of such report. In addition, in the event that such report discloses that the aggregate balance of Consigned Merchandise is overstated exclusive of defective units and returns, Consignee shall deduct the value of the overage from any payment otherwise owed to Consignor. 7(b).

## RESPONSE TO ALLEGATION NO. 19:

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 19 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

## ALLEGATION NO. 20:

For all of the reasons set forth above, and additional reasons, Electrolux has at all times been, and remains, the owner of all Electrolux Consignment Inventory while it is in the possession of Gregg, and all proceeds of the Electrolux Consignment Inventory.

## RESPONSE TO ALLEGATION NO. 20:

Debtors state that the allegations of paragraph 20 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 20.

## ALLEGATION NO. 21:

For all of the reasons set forth above, and additional reasons, the Consignment Agreement is a true consignment and is not a security or financing agreement.

## RESPONSE TO ALLEGATION NO. 21:

Debtors state that the allegations of paragraph 21 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 21.

**ALLEGATION NO. 22:**

The Consignment Agreement does not require Electrolux to deliver any of Electrolux's branded products to Gregg, and at any time Electrolux is entitled to stop providing Electrolux's branded products to Gregg and end the Consignment Agreement. In 1 and 2.

**RESPONSE TO ALLEGATION NO. 22:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 22 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 23:**

The Consignment Agreement requires Gregg to return the Electrolux Consignment Inventory upon demand by Electrolux. ¶¶ 2 and 4.

**RESPONSE TO ALLEGATION NO. 23:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 23 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 24:**

The Consignment Agreement provides that the Electrolux Consignment Inventory shall only be sold in the ordinary course of business and does not allow sale of the Electrolux Consignment Inventory in a liquidation or going out of business sale. I 2.

**RESPONSE TO ALLEGATION NO. 24:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 24 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 25:**

The Consignment Agreement prohibits any relocation of the Electrolux Consignment Inventory without Electrolux's prior written consent. ¶ 3(a).

**RESPONSE TO ALLEGATION NO. 25:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 25 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 26:**

The Consignment Agreement provides that Gregg holds the Electrolux Consignment Inventory and proceeds in trust for purposes of fulfilling the terms of the Consignment Agreement, namely the sale of the Electrolux Consignment Inventory and remittance of proceeds to Electrolux. ¶ 4.

**RESPONSE TO ALLEGATION NO. 26:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 26 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 27:**

The Consignment Agreement is governed by North Carolina law applicable to contracts made and to be performed wholly within that state. ¶ 27.

**RESPONSE TO ALLEGATION NO. 27:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 27 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**C. The Debtors Have Not Granted and Cannot Grant a Security Interest in the Electrolux Consignment Inventory, Whether Prepetition of Postpetition.**

**ALLEGATION NO. 28:**

On March 7, 2017, the Debtors filed a Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §' 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §' 364 and 507; (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. §' 361, 362, 363, and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and Local Rule 4001-2 [Docket No. 18] in this Case (the "DIP Motion").

**RESPONSE TO ALLEGATION NO. 28:**

Admitted.

**ALLEGATION NO. 29:**

Attached to the DIP Motion as Exhibit B is a proposed Debtor in Possession Credit Agreement (the "DIP Credit Agreement").

**RESPONSE TO ALLEGATION NO. 29:**

Admitted.

**ALLEGATION NO. 30:**

Through numerous provisions, the DIP Credit Agreement assiduously and expressly makes it clear that the DIP Credit Agreement does not have the effect of granting a postpetition security interest in or lien upon any of the Electrolux Consignment Inventory that would have priority over Electrolux's interest in the Electrolux Consignment Inventory:

a.    The definition of Eligible Commercial Accounts (for use in calculating the Borrowing Base) excludes accounts that arise from sales on consignment. ¶ 1.60(d).

b.    The definition of Eligible Credit Card Receivables (for use in calculating the Borrowing Base) excludes receivables that arise from sales on consignment. ¶ 1.61(b).

c.    The definition of Eligible Inventory (for use in calculating the Borrowing Base) excludes inventory that is "purchased or sold on consignment, including without limitation, Frigidaire Consignment Collateral * * *." ¶ 1.63(1).

11

d.    By definition, "Frigidaire Consignment Collateral" means all inventory manufactured or distributed by Electrolux, and "Frigidaire" means Electrolux. 'IrIf 1.93 and 1.95 and Schedule 1.C.

e.    By definition, "Frigidaire Consignment Agreement" means the Consignment Agreement, dated September 24, 2003, by and between Frigidaire and Gregg with respect to certain inventory manufactured by Frigidaire and sold by Gregg, "as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced." ¶ 1.94.

## RESPONSE TO ALLEGATION NO. 30:

Debtors state that the DIP Credit Agreement speaks for itself and Debtors deny any allegations in paragraph 30 to the extent they do not fully and accurately characterize the content of the DIP Credit Agreement or otherwise seek to characterize the purpose of any given provision of the DIP Credit Agreement.

## ALLEGATION NO. 31:

The Consignment Agreement is a renewal, restatement, or replacement of the Frigidaire Consignment Agreement.

## RESPONSE TO ALLEGATION NO. 31:

Debtors state that the allegations of paragraph 31 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 31.  By way of further response, Debtors state that paragraph 26 of the Consignment Agreement states that the Consignment Agreement "supersedes any prior understanding, communication, agreement or representation whether oral or in writing."

## ALLEGATION NO. 32:

Therefore, the DIP Credit Agreement expressly excludes granting a postpetition security interest in or lien upon any of the Electrolux Consignment Inventory and proceeds that would have the effect of having priority over Electrolux's interest in the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 32:**

Debtors state that the allegations of paragraph 32 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 32.

**ALLEGATION NO. 33:**

On March 7, 2017, the Court entered its Interim Order (I) Authorizing Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507; (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(13) and (C) and Local Rule 4001-2 [Docket No. 50] in this Case (the "Interim DIP Order").

**RESPONSE TO ALLEGATION NO. 33:**

Admitted.

**ALLEGATION NO. 34:**

The Interim DIP Order approved the DIP Credit Agreement on an interim basis.

**RESPONSE TO ALLEGATION NO. 34:**

Admitted.

**ALLEGATION NO. 35:**

At the "first day" hearing on March 7, 2017, the Debtors' counsel, in arguing for the granting of the DIP Motion and the other first day motions, represented to the Court that Electrolux was a major consignment vendor of the Debtors and was essential to the Debtors' ongoing business operations, the Chapter 11 cases, and a successful reorganization.

**RESPONSE TO ALLEGATION NO. 35:**

Admitted that during the "first day" hearing on March 7, 2017 in the Debtors' Chapter 11 proceeding, Debtors' counsel represented to the Court the Plaintiff is one of two "major consignment vendor suppliers," but denied as to the other allegations in Paragraph 35.

**ALLEGATION NO. 36:**

The Debtors are parties to that certain Amended and Restated Loan and Security Agreement dated as of March 29, 2011 (collectively with all amendments thereto, the "Prepetition Credit Agreement"), by and among Gregg, as borrower, and Wells Fargo as administrative agent and collateral agent for the Prepetition Secured Parties, as that term is defined in the DIP Credit Agreement.

**RESPONSE TO ALLEGATION NO. 36:**

Debtors admit that Gregg (as Borrower) and HHG Distributing, LLC (as Guarantor) are parties

to that certain Amended and Restated Loan and Security Agreement dated as of March 29, 2011

(the "Prepetition Credit Agreement").   Denied that hhgregg is a party to the Prepetition Credit

Agreement.   Debtors further state that the Prepetition Credit Agreement speaks for itself and

Debtors deny any allegations in paragraph 36 to the extent they do not fully and accurately

characterize the content of the Amended and Restated Loan and Security Agreement.

**ALLEGATION NO. 37:**

On information and belief, the Prepetition Credit Agreement was in part the model for the DIP Credit Agreement, and the Prepetition Credit Agreement also expressly excludes the granting of any security interest in the prepetition Electrolux Consignment Inventory that would have the effect of having priority over Electrolux's interest in the Electrolux Consignment Inventory. Specifically, the Prepetition Credit Agreement provides as follows:

    a.    1.44 "Eligible Inventory" excludes "Inventory purchased or sold on consignment, including without limitation, Frigidaire Consignment Collateral * * *,9

    b.    7.1(a)(i) <u>Collateral Reporting</u> requires the Debtors to provide weekly and monthly reports (C) inventory reports by categories, location and mix (including indicating the amounts of Inventory at warehouses and stores, and detail regarding Inventory subject to the Frigidaire Consignment Agreement) ** *"

    c.    7.1(a)(iii) <u>Collateral Reporting</u> requires the Debtors to provide monthly "reports regarding the inventory subject to the Frigidaire Consignment Agreement."

    d.    10.1(i) <u>Events of Default</u> includes defaults under "Material Contracts" including the "Frigidaire Consignment Agreement."

**RESPONSE TO ALLEGATION NO. 37:**

Debtors state that the Prepetition Credit Agreement speaks for itself and Debtors deny any allegations in paragraph 37 to the extent they do not fully and accurately characterized the content of the Prepetition Credit Agreement or otherwise seek to characterize the purpose of any given provision of the Prepetition Credit Agreement.

**ALLEGATION NO. 38:**

The Consignment Agreement between Electrolux and Gregg provides that Electrolux "shall at all times retain title to all Consigned Merchandise." Thus, pursuant to the terms of the Consignment Agreement, the Electrolux Consignment Inventory was never "owned" nor "hereafter acquired" by Gregg. Instead, the Electrolux Consignment Inventory was, at all times prior to sale to a Gregg customer, owned by Electrolux.

**RESPONSE TO ALLEGATION NO. 38:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 38 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 39:**

The Electrolux Consignment Inventory and proceeds are not owned by the Debtors, and are expressly and specifically recognized in the DIP Credit Agreement as the property of Electrolux and not subject to any superior rights of the lenders.

**RESPONSE TO ALLEGATION NO. 39:**

Debtors state that the allegations of paragraph 39 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 39.

**D.  The Debtor's Postpetition Sales of the Electrolux Consignment Inventory.**

**ALLEGATION NO. 40:**

Pursuant to the Consignment Agreement, Gregg was obligated to make a payment to Electrolux on Wednesday, March 8, 2017, for Gregg's sales of Electrolux Consignment Inventory during the previous seven-day period ending on March 5, 2017. The amount that was due and owing to Electrolux and should have been paid by Gregg on March 8 was not less than $2,046,717.87. Gregg was further obligated to make a payment to Electrolux on Wednesday, March 15, 2017, for Gregg's sales of Electrolux Consignment Inventory during the previous seven-day period ending on March 12, 2017, which is in an unknown amount. Since the Chapter 11 filing, through April 10, 2017, the amount unpaid, and due and owing to Electrolux, is $10,855,849.81.

**RESPONSE TO ALLEGATION NO. 40:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 40 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.  Debtors further state that the allegations of paragraph 40 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 40.

**ALLEGATION NO. 41:**

Despite demand by Electrolux, Gregg has failed and refused to make either of these payments to Electrolux.

**RESPONSE TO ALLEGATION NO. 41:**

Debtors admit that Gregg has not made any payments to Electrolux under the Consignment Agreement since the bankruptcy cases were filed.

**ALLEGATION NO. 42:**

By order entered on March 13, 2017 [Docket No. 137] (the "Interim Store Closing Order")., the Court granted on an interim basis the Debtors' first-day motion to continue their store-closing sales, which had commenced prepetition on March 3, 2017.

**RESPONSE TO ALLEGATION NO. 42:**

Admitted.

**ALLEGATION NO. 43:**

Paragraph 23 of the Interim Store Closing Order allows the Debtors and the Consultant (as defined in the Store Closing Order) to sell "Merchandise" free and clear of liens and encumbrances, and directs the Debtors to use the proceeds of these sales to pay existing secured debt consistent with the Interim DIP Order and the DIP Credit Agreement.

**RESPONSE TO ALLEGATION NO. 43:**

Debtors state that the Interim Store Closing Order speaks for itself and Debtors deny any allegations in paragraph 43 to the extent they do not fully and accurately characterize the content of the Interim Store Closing Order or otherwise seek to characterize the purpose of any given provision of the Interim Store Closing Order.

**ALLEGATION NO. 44:**

Paragraph 8 of the Interim Store Closing Order authorizes the Debtors to continue the Store Closing Sales "in accordance with this Interim Order, the Sale Guidelines, and the Agreement." The Agreement is defined as the Consulting Agreement that is attached to that order as Exhibit 1.

**RESPONSE TO ALLEGATION NO. 44:**

Debtors state that the Interim Store Closing Order speaks for itself and Debtors deny any allegations in paragraph 44 to the extent they do not fully and accurately characterize the content of the Interim Store Closing Order or otherwise seek to characterize the purpose of any given provision of the Interim Store Closing Order.

**ALLEGATION NO. 45:**

In Section 2 of this Consulting Agreement, "Merchandise" is defined generally as all goods that are saleable in the ordinary course, but the definition excludes goods held on consignment, which are defined as "Consigned Goods." Consigned Goods, and some other goods excluded from the definition of "Merchandise," are collectively defined as the "Non-Merchandise Goods."

**RESPONSE TO ALLEGATION NO. 45:**

Debtors state that the Consulting Agreement speaks for itself and Debtors deny any allegations in paragraph 45 to the extent they do not fully and accurately characterize the content of the

Consulting Agreement or otherwise seek to characterize the purpose of any given provision of the Consulting Agreement.

**ALLEGATION NO. 46:**

Section 6.d(ii) of the Consulting Agreement provides a fee schedule to be paid the Consultant from Gross Proceeds, but excludes "Gross Proceeds from Consigned Goods." Immediately below this fee schedule, the Consulting Agreement states that ***"Consultant shall sell Non-Merchandise Goods*** during the Sale at the Stores, and in consideration of such services, Consultant shall earn a fee equal to * * *." (emphasis added).

**RESPONSE TO ALLEGATION NO. 46:**

Debtors state that the Consulting Agreement speaks for itself and Debtors deny any allegations in paragraph 46 to the extent they do not fully and accurately characterize the content of the Consulting Agreement or otherwise seek to characterize the purpose of any given provision of the Consulting Agreement.

**ALLEGATION NO. 47:**

Therefore, the Consulting Agreement is subject to the interpretation of allowing the sale of Electrolux Consignment Inventory, and thus such sale could be allowed by the Interim Store Closing Order, and the proceeds of such sales of the Electrolux Consignment Inventory would under this interpretation be paid to Wells Fargo under the Interim DIP Order.

**RESPONSE TO ALLEGATION NO. 47:**

Debtors state that the Consulting Agreement speaks for itself and Debtors deny any allegations in paragraph 47 to the extent they do not fully and accurately characterize the content of the Consulting Agreement or otherwise seek to characterize the purpose of any given provision of the Consulting Agreement.

**ALLEGATION NO. 48:**

On information and belief, Gregg continues to sell the Electrolux Consignment Inventory, and Gregg has failed and refused to pay Electrolux any proceeds received from the sale of Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 48:**

Debtors admit that Gregg continues to sell the Electrolux Consignment Inventory and that no payments have been made to Electrolux under the Consignment Agreement since the bankruptcy filing.  Debtors deny the remaining allegations in paragraph 48.

**ALLEGATION NO. 49:**

On April 7, 2017, the Court approved the Debtors' Phase II liquidation sale, and the Debtors continue to sell the Electrolux Consignment Inventory without paying Electrolux the obligations owed to it.

**RESPONSE TO ALLEGATION NO. 49:**

Debtors admit that on April 7, 2017, the Court approved the Debtors' Phase II liquidation sale.

Debtors also admit that Gregg continues to sell the Electrolux Consignment Inventory and that no payments have been made to Electrolux under the Consignment Agreement since the bankruptcy filing.  Debtors deny the remaining allegations in paragraph 49.

**ALLEGATION NO. 50:**

On information and belief, the proceeds from the sale of Electrolux Consignment Inventory have not been segregated for Electrolux's benefit. Rather, the proceeds have been commingled with Gregg's operating funds and are being paid to Wells and the other lenders under the DIP Order.

**RESPONSE TO ALLEGATION NO. 50:**

Denied.

**ALLEGATION NO. 51:**

Gregg's actions stated above constitute a breach of its performance obligations under the Consignment Agreement and a default under and breach of the Consignment Agreement. This default and breach materially prejudices the rights of Electrolux in and to the Electrolux Consignment Inventory as provided in the Consignment Agreement.

**RESPONSE TO ALLEGATION NO. 51:**

Debtors state that the allegations of paragraph 51 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 51.

**ALLEGATION NO. 52:**

Section 10.1 of the DIP Credit Agreement lists Events of Default under that agreement. Subsection (f)(ii) defines one of the Events of Default as "any default by Borrower or any Obligor under any Material Contract (including, without limitation, any of the Credit Card Agreements or the Frigidaire Consignment Agreement) * * *."

**RESPONSE TO ALLEGATION NO. 52:**

Debtors state that the DIP Credit Agreement speaks for itself and Debtors deny any allegations in paragraph 52 to the extent they do not fully and accurately characterize the content of the DIP Credit Agreement or otherwise seek to characterize the purpose of any given provision of the DIP Credit Agreement.

**ALLEGATION NO. 53:**

Therefore, Gregg's default under the Consignment Agreement comprises a default under the DIP Credit Agreement.

**RESPONSE TO ALLEGATION NO. 53:**

Debtors state that the allegations of paragraph 53 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 53.

**ALLEGATION NO. 54:**

Unless Defendants Gregg, the Consultant and Wells Fargo are immediately enjoined, Electrolux will suffer irreparable harm because:

    a.    The Debtors have and continue to dispose of Electrolux Consignment Inventory without permitting Electrolux to be fully and fairly heard on this issue in an Adversary Proceeding. Any sale of the Electrolux Consignment Inventory prior to a determination of the Debtors' interest in such property is in direct violation of

controlling precedent. *See SLW Capital, LLC v. Mansaray-Ruffin, 530 F.2d 230, 237 (3rd. Cir. 2008); See, i.e., SLW Capital, LLC v. Mansaray-Ruffin, 530 F.2d 230, 237 (3rd. Cir. 2008); In re Whitehall Jewelers*, No. 08-11261 (KG), 2008 Bankr. LEXIS 2120 (Bankr. D. Del. July 28, 2008.)

b.    Debtors are seeking to liquidate all their assets on or before on or before April 25, 2017 pursuant to the Bidding Procedures Motion and the Hilco Motion. As a result, there will be no determination of the Debtors' interest in the Electrolux Consignment Inventory prior to the Debtors' expedited sales in these Chapter 11 Cases.

c.    Debtors are selling Electrolux Consignment Inventory at discount prices, without remitting any proceeds of sale to Electrolux, as required by the Electrolux Consignment Agreement.

d.    The Bidding Procedures Motion and the Hilco Motion seek to immediately liquidate inventory in all of the Debtors' stores and sell such property free and clear of all liens, claims, encumbrances, and interests, and that the proceeds of the sales will be paid to Wells Fargo.

e.    The DIP Motion seeks authority to grant first priority security interests in and liens on all assets of the Debtors, including all previously unencumbered assets. To the extent the DIP Motion seeks to impair Electrolux's ownership interest in the Electrolux Consignment Inventory, the Debtors have no legal basis to grant an interest in property that is not property of their estates.

f.    Use, sale or impairment of the Electrolux Consignment Inventory without Electrolux's consent is an unlawful conversion of such property to which there is no adequate remedy at law.

g.    Electrolux will suffer serious and irreparable financial losses if the Electrolux Consignment Inventory is sold at discounted prices. Electrolux cannot specifically identify the financial losses until it obtains all records for the current status of the Consignment Inventory.

## RESPONSE TO ALLEGATION NO. 54:

Denied.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment - Ownership)

## ALLEGATION NO. 55:

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 55:**

Debtors repeat and re-allege their responses to paragraphs 1-54.

**ALLEGATION NO. 56:**

This is an action for declaratory relief against the Defendants pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. §§ 105 and 541, 546, Rule 57 of the Federal Rules of Civil Procedure, and Rules 7001 and 7001(9) of the Federal Rules of Bankruptcy Procedure.

**RESPONSE TO ALLEGATION NO. 56:**

Admitted.

**ALLEGATION NO. 57:**

There is a bona fide, actual, present, and practical need for a declaration regarding the ownership rights of the Electrolux Consignment Inventory, the rights of Gregg to sell the Electrolux Consignment Inventory, the rights of Electrolux to the proceeds of the sales of the Electrolux Consignment Inventory, and the right of Electrolux to regain possession of the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 57:**

Debtors state that the allegations of paragraph 57 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 57.

**ALLEGATION NO. 58:**

An actual controversy exists for which necessary and proper relief may be granted by declaratory judgment.

**RESPONSE TO ALLEGATION NO. 58:**

Debtors state that the allegations of paragraph 58 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 58.

**ALLEGATION NO. 59:**

The declaration requested herein deals with a present, ascertained, or ascertainable state of facts, or a present controversy as to a state of facts.

**RESPONSE TO ALLEGATION NO. 59:**

Debtors state that the allegations of paragraph 59 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 59.

**ALLEGATION NO. 60:**

hhgregg, Gregg, HHG, Wells Fargo and the Consultant have, or reasonably may have, an actual, present, adverse, and antagonistic interest in this Court's determination that Electrolux owns the Electrolux Consignment Inventory and the proceeds of the sale of the Electrolux Consignment Inventory that the Electrolux Consignment Inventory may be sold by Gregg only pursuant to the terms of the Consignment Agreement and that Electrolux may repossess the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 60:**

Debtors state that the allegations of paragraph 60 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 60.

**ALLEGATION NO. 61:**

There are no other parties known to have an interest in this determination other than the parties to this proceeding.

**RESPONSE TO ALLEGATION NO. 61:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 61; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 61.

**ALLEGATION NO. 62:**

The declaratory relief sought would not amount to the giving of legal advice by this Court, nor would it answer questions propounded from curiosity.

**RESPONSE TO ALLEGATION NO. 62:**

Debtors state that paragraph 62 contains contentions of law to which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 62.

**ALLEGATION NO. 63:**

All conditions precedent to initiating and maintaining this proceeding have been performed, have occurred, or have been waived.

**RESPONSE TO ALLEGATION NO. 63:**

Debtors state that paragraph 63 contains contentions of law to which no response is required; to

the extent a response is required, Debtors deny the allegations in paragraph 63.

**ALLEGATION NO. 64:**

Therefore, Electrolux seeks a declaratory judgment prohibiting the sale of the Electrolux Consignment Inventory except in compliance with all of the terms of the Consignment Agreement, and, determining that Electrolux is the sole owner of the Electrolux Consignment Inventory and proceeds

**RESPONSE TO ALLEGATION NO. 64:**

Debtors state that paragraph 64 contains characterizations of the relief Electrolux seeks to which

no response is required.  Debtors deny that Plaintiff is entitled to any relief.

SECOND CAUSE OF ACTION
**(Declaratory Judgment - True Consignment)**

**ALLEGATION NO. 65:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 65:**

Debtors repeat and re-allege their responses to paragraphs 1-64.

**ALLEGATION NO. 66:**

Electrolux seeks a declaratory judgment prohibiting the sale of the Electrolux Consignment Inventory except in compliance with all of the terms of the Consignment Agreement, and in particular:

      a.      Determining that the Consignment Agreement is a true consignment agreement and not a financing or security agreement.

b.      Determining that neither Gregg nor any other of the Debtors has or ever had the authority to grant a security interest in or lien upon the Electrolux Consignment Inventory.

c.      Determining that neither Wells Fargo nor any other entity has a security interest in or lien upon the Electrolux Consignment Inventory.

d.      Determining that Electrolux is entitled to the proceeds of all prepetition and postpetition sales of the Electrolux Consignment Inventory as provided by the Consignment Agreement.

e.      Determining that the Consignment Agreement provides Electrolux with the right to demand the immediate return of the Electrolux Consignment Inventory.

f.      Determining that neither Gregg nor the Consultant has the right to sell any of the Electrolux Consignment Inventory in a liquidation sale or in a sale under section 363 of the Code.

g.      Determining that Gregg and the Consultant may sell the Electrolux Consignment Inventory solely in the ordinary course of the Debtors' business.

h.      In the alternative to the preceding paragraph, terminating any implied license of Gregg to sell Electrolux Consignment Inventory bearing Electrolux's trademarks and to use other intellectual property rights belonging to Electrolux.

## RESPONSE TO ALLEGATION NO. 66:

Debtors state that paragraph 66 contains characterizations of the relief Electrolux seeks to which

no response is required.  Debtors deny that Electrolux is entitled to any relief.

### THIRD CAUSE OF ACTION
### (Breach of Contract - Debtors)

## ALLEGATION NO. 67:

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

## RESPONSE TO ALLEGATION NO. 67:

Debtors repeat and re-allege their responses to paragraphs 1-66.

## ALLEGATION NO. 68:

By failing and refusing to make payments to Electrolux as required by the Consignment Agreement and for the other reasons stated above, Gregg has breached the Consignment Agreement.

**RESPONSE TO ALLEGATION NO. 68:**

Debtors state that the allegations of paragraph 68 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 68.

**ALLEGATION NO. 69:**

Pursuant to Gregg's breach of the Consignment Agreement, Electrolux is entitled to possession of Electrolux Consignment Inventory remaining in the possession of Gregg.

**RESPONSE TO ALLEGATION NO. 69:**

Debtors state that the allegations of paragraph 69 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 69.

**ALLEGATION NO. 70:**

Pursuant to Gregg's breach of the Consignment Agreement, Electrolux is entitled to possession of Electrolux Consignment Inventory remaining in the possession of Gregg.

**RESPONSE TO ALLEGATION NO. 70:**

Debtors state that the allegations of paragraph 70 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 70.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract - Wells Fargo)**

The Fourth Cause of Action (paragraphs 71-80) is not brought against the Debtors and, therefore, no response from the Debtors is required. The Debtors otherwise deny the allegations of paragraphs 71 through 80.

## FIFTH CAUSE OF ACTION
### (Relief from Stay)

**ALLEGATION NO. 71:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 71:**

Debtors repeat and re-allege their responses to paragraphs 1-80.

**ALLEGATION NO. 72:**

As stated above, Gregg has mere possession of the Electrolux Consignment Inventory and no ownership rights in the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 72:**

Debtors state that the allegations of paragraph 82 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 82.

**ALLEGATION NO. 73:**

Pursuant to Gregg's breach of the Consignment Agreement, Gregg is no longer entitled to possession of the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 73:**

Debtors state that the allegations of paragraph 83 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 83.

**ALLEGATION NO. 74:**

Electrolux is entitled to relief from stay in order to repossess the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 74:**

Debtors state that the allegations of paragraph 84 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 84.

**SIXTH CAUSE OF ACTION**
**(Constructive Trust)**

**ALLEGATION NO. 75:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 75:**

Debtors repeat and re-allege their responses to paragraphs 1-84.

**ALLEGATION NO. 76:**

Pursuant to the Consignment Agreement, Gregg holds the Electrolux Consignment Inventory and the proceeds from the sale of any of the Electrolux Consignment Inventory in trust for Electrolux.

**RESPONSE TO ALLEGATION NO. 76:**

Debtors state that the allegations of paragraph 86 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 86.

**ALLEGATION NO. 77:**

Electrolux is entitled to an accounting from Gregg and return of all Electrolux Consignment Inventory and payment of all amounts due under the Consignment Agreement from the sale of Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 77:**

Debtors state that the allegations of paragraph 87 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 87.

28

**ALLEGATION NO. 78:**

Under the DIP Order, all cash receipts by the Debtor are "swept" by Wells Fargo and used to satisfy obligations owed to it.

**RESPONSE TO ALLEGATION NO. 78:**

Debtors state that the DIP Order speaks for itself and Debtors deny any allegations in paragraph 88 to the extent they do not fully and accurately characterize the content of the DIP Order or otherwise seek to characterize the purpose of any given provision of the DIP Order.

**ALLEGATION NO. 79:**

Electrolux is entitled to an accounting from Wells Fargo regarding all cash receipts received arising from the sale of Electrolux's consignment inventory, and is entitled to payment from Wells Fargo of all such proceeds.

**RESPONSE TO ALLEGATION NO. 79:**

Debtors state that the allegations of paragraph 89 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 89.

**ALLEGATION NO. 80:**

Wells Fargo holds all such proceeds in constructive trust for the benefit of Electrolux and the proceeds therefrom.

**RESPONSE TO ALLEGATION NO. 80:**

Debtors state that the allegations of paragraph 90 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 90.

**SEVENTH CAUSE OF ACTION**
**(Conversion)**

**ALLEGATION NO. 81:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 81:**

Debtors repeat and re-allege their responses to paragraphs 1-90.

**ALLEGATION NO. 82:**

Gregg continues to sell the Electrolux Consignment Inventory, and Gregg has wrongfully failed and refused to pay Electrolux proceeds received from the sale of Electrolux Consignment Inventory. The proceeds are instead swept into an account controlled by Wells Fargo on behalf of the lenders.

**RESPONSE TO ALLEGATION NO. 82:**

Debtors admit that Gregg continues to sell the Electrolux Consignment Inventory.  Debtors deny

the remaining allegations in paragraph 92.

**ALLEGATION NO. 83:**

Gregg and Wells Fargo, on behalf of the lenders, wrongfully retain possession of the unsold Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 83:**

Denied.

**ALLEGATION NO. 84:**

Gregg and Wells Fargo, on behalf of the lenders, have converted the Electrolux Consignment Inventory and the proceeds from the sale of Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 84:**

Denied.

**ALLEGATION NO. 85:**

Electrolux has suffered damages from such conversion of the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 85:**

Denied.

**ALLEGATION NO. 86:**

Because of such conversion of the Electrolux Consignment Inventory, Electrolux is entitled to payment from Gregg and Wells Fargo, on behalf of lenders, as calculated under the Consignment

Agreement for all Electrolux Consignment Inventory sold by Gregg and to have Gregg surrender to Electrolux of all Electrolux Consignment Inventory in the possession of Gregg.

**RESPONSE TO ALLEGATION NO. 86:**

Denied.

### EIGHTH CAUSE OF ACTION
### (Unjust Enrichment - Wells Fargo)

The Eighth Cause of Action (paragraphs 97-106) is not brought against the Debtors and, therefore, no response from the Debtors is required. The Debtors otherwise deny the allegations of paragraphs 97-106.

### NINTH CAUSE OF ACTION
### (Unjust Enrichment - Debtors' Estate)

**ALLEGATION NO. 87:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 87:**

Debtors repeat and re-allege their responses to paragraphs 1-106.

**ALLEGATION NO. 88:**

Shipment of goods by Electrolux to Gregg pursuant to the Consignment Agreement materially enhanced Gregg's inventory product offerings for customers, allowing Gregg to generate substantial revenue to maintain a chain of 220 stores throughout the United States.

**RESPONSE TO ALLEGATION NO. 88:**

Debtors admit that Electrolux shipped products to Gregg and deny the remaining allegations of paragraph 108. By way of further response, Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 108 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 89:**

As a result, Gregg was able to purchase goods from vendors on open account, and such vendors made substantial profit for many years.

**RESPONSE TO ALLEGATION NO. 89:**

Denied.

**ALLEGATION NO. 90:**

Creditors had knowledge that Gregg sold to its customers Electrolux's branded products.

**RESPONSE TO ALLEGATION NO. 90:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

110; therefore, to the extent a response is required, Debtors deny the allegations in paragraph

110.

**ALLEGATION NO. 91:**

On information and belief, creditors knew that the Electrolux Consignment Inventory was delivered on consignment and that Electrolux owned the Electrolux Consignment Inventory at all times.

**RESPONSE TO ALLEGATION NO. 91:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

111; therefore, to the extent a response is required, Debtors deny the allegations in paragraph

111.

**ALLEGATION NO. 92:**

Any assertion by the Debtors of any interest in the Electrolux Consignment Inventory would materially prejudice the rights of Electrolux.

**RESPONSE TO ALLEGATION NO. 92:**

Denied.

**ALLEGATION NO. 93:**

Debtors have asserted or may assert a position contrary to the terms of the Consignment Agreement and compliance therewith.

**RESPONSE TO ALLEGATION NO. 93:**

Denied.

**ALLEGATION NO. 94:**

The Debtors should be precluded and prohibited from asserting any interest in or benefitting from the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 94:**

Denied.

**TENTH CAUSE OF ACTION**
**(Estoppel all Parties)**

**ALLEGATION NO. 95:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 95:**

Debtors repeat and re-allege their responses to paragraphs 1-114.

**ALLEGATION NO. 96:**

The Consignment Agreement between Electrolux and Gregg included, among other provisions, an agreement that Electrolux owned the Electrolux Consignment Inventory and contained a promise by Gregg to comply with the Consignment Agreement, including timely payment to Electrolux upon the sale of the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 96:**

Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations

in paragraph 116 to the extent they do not fully and accurately characterize the content of the

Consignment Agreement or otherwise seek to characterize the purpose of any given provision of

the Consignment Agreement.

DB1/ 91875314

**ALLEGATION NO. 97:**

Electrolux has performed all of its obligations under the Consignment Agreement at all times, and Gregg and its business and various stakeholders have materially benefitted from Electrolux's compliance with its obligations under the Consignment Agreement.

**RESPONSE TO ALLEGATION NO. 97:**

Debtors state that the allegations of paragraph 117 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 117. By way of further response, Debtors state that the Consignment Agreement speaks for itself and Debtors deny any allegations in paragraph 117 to the extent they do not fully and accurately characterize the content of the Consignment Agreement or otherwise seek to characterize the purpose of any given provision of the Consignment Agreement.

**ALLEGATION NO. 98:**

Electrolux's performance was in reliance on Gregg's performance of its obligations under the Consignment Agreement, including payment to Electrolux upon the sale of the Electrolux Consignment Inventory.

**RESPONSE TO ALLEGATION NO. 98:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 118; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 118.

**ALLEGATION NO. 99:**

Gregg's failure to perform its obligations under the Consignment Agreement is detrimental to Electrolux.

**RESPONSE TO ALLEGATION NO. 99:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 119; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 119.

**ALLEGATION NO. 100:**

It is unconscionable for Gregg to not perform its obligations under the Consignment Agreement, and for any party to assert any interest in the Electrolux Consignment Inventory or proceeds thereof. Gregg and the other defendants should each be estopped from asserting any rights or taking action adverse or prejudicial to Electrolux's rights under the Consignment Agreement and with respect to the Electrolux Consignment Inventory and proceeds.

**RESPONSE TO ALLEGATION NO. 100:**

Denied.

**ALLEGATION NO. 101:**

Based on the express exclusions of the Electrolux Consignment Inventory and proceeds in the Credit Agreements, Wells Fargo, on behalf of the lenders, should be estopped from asserting any rights or taking action adverse or prejudicial to Electrolux's rights under the Consignment Agreement and with respect to the Electrolux Consignment Inventory and proceeds.

**RESPONSE TO ALLEGATION NO. 101:**

Denied.

**ELEVENTH CAUSE OF ACTION**
**(Marshalling)**

**ALLEGATION NO. 102:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 102:**

Debtors repeat and re-allege their responses to paragraphs 1-121.

**ALLEGATION NO. 103:**

Wells Fargo asserts a first priority lien on the Debtors' assets (not including Electrolux's consignment inventory and proceeds).

**RESPONSE TO ALLEGATION NO. 103:**

Debtors admit that Wells Fargo asserts a first priority lien as to certain of Debtors' assets. The

extent of Wells Fargo's liens is established by the operative agreements between the Debtors'

and Wells Fargo, including the Prepetition Credit Agreement and the DIP Credit Agreement,

which agreements speak for themselves and Debtors deny any allegations in paragraph 123 to the extent they do not fully and accurately characterize the content of those agreements or otherwise seek to characterize the purpose of any given provision of those agreements.

**ALLEGATION NO. 104:**

Wells Fargo as set forth above, assiduously excluded Electrolux's consignment inventory and proceeds from its collateral and borrowing base.

**RESPONSE TO ALLEGATION NO. 104:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 124; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 124.

**ALLEGATION NO. 105:**

Upon the filing of the Chapter 11 case, Wells Fargo has attempted, in the DIP Motion, to effectively seize the Electrolux Consignment Inventory and all proceeds thereof as part of its collateral.

**RESPONSE TO ALLEGATION NO. 105:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 125; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 125.

**ALLEGATION NO. 106:**

Wells Fargo's loans to the Debtors were in no way based on the Electrolux consignment inventory and proceeds, which was expressly excluded.

**RESPONSE TO ALLEGATION NO. 106:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 126; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 126.

**ALLEGATION NO. 107:**

Electrolux has no lien on the Debtors' assets.

**RESPONSE TO ALLEGATION NO. 107:**

The allegations in paragraph 127 state a legal conclusion to which no response is required.  To the extent a response is deemed required, the Debtors accept Electrolux's admission that it has no lien on the Debtors' assets.

**ALLEGATION NO. 108:**

Wells Fargo asserts its rights to be paid arising from its lien on the Debtors' assets.

**RESPONSE TO ALLEGATION NO. 108:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 128; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 128.

**ALLEGATION NO. 109:**

Wells Fargo may not take action to defeat Electrolux's ownership interest under the doctrine of marshalling.

**RESPONSE TO ALLEGATION NO. 109:**

Debtors state that the allegations of paragraph 129 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 129.

**TWELFTH CAUSE OF ACTION**
**(Third Party Beneficiary)**

**ALLEGATION NO. 110:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 110:**

Debtors repeat and re-allege their responses to paragraphs 1-129.

**ALLEGATION NO. 111:**

The Prepetition Credit Agreement and the DIP Credit Agreement (the "Credit Agreements") specifically and expressly exclude the Electrolux consignment inventory from the liens and security interests of the lenders, and from the Debtors' borrowing base.

**RESPONSE TO ALLEGATION NO. 111:**

Debtors state that the Credit Agreements speak for themselves and Debtors deny any allegations

in paragraph 131 to the extent they do not fully and accurately characterize the content of the

Credit Agreements or otherwise seek to characterize the purpose of any given provision of the

Credit Agreements.

**ALLEGATION NO. 112:**

The Prepetition Credit Agreement and the DIP Credit Agreement (the "Credit Agreements") provide that the Electrolux Consignment Agreement is a "Material Contract", the default of which constitutes a default under the Credit Agreements.

**RESPONSE TO ALLEGATION NO. 112:**

Debtors state that the Credit Agreements speak for themselves and Debtors deny any allegations

in paragraph 132 to the extent they do not fully and accurately characterize the content of the

Credit Agreements or otherwise seek to characterize the purpose of any given provision of the

Credit Agreements.

**ALLEGATION NO. 113:**

Wells Fargo deemed Electrolux's Consignment Agreement essential to the Debtors' business operation, and sought to protect itself if the Debtors breached the Consignment Agreement.

**RESPONSE TO ALLEGATION NO. 113:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 133; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 133.

**ALLEGATION NO. 114:**

Wells Fargo's loan covenant regarding "Material Contracts" was intended to insure performance of the Consignment Agreement by the Debtors.

**RESPONSE TO ALLEGATION NO. 114:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 134; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 134.

**ALLEGATION NO. 115:**

Electrolux was a beneficiary of such loan covenants.

**RESPONSE TO ALLEGATION NO. 115:**

Debtors state that the allegations of paragraph 135 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 135.

**ALLEGATION NO. 116:**

The DIP Credit Agreement additionally includes an approved budget providing for the payment of consignment vendors and Electrolux is the intended benefit [sic] of such provision.

**RESPONSE TO ALLEGATION NO. 116:**

Debtors state that the DIP Credit Agreement speaks for itself and Debtors deny any allegations in paragraph 136 to the extent they do not fully and accurately characterize the content of the DIP Credit Agreement or otherwise seek to characterize the purpose of any given provision of the DIP Credit Agreement.

**ALLEGATION NO. 117:**

As the intended third party beneficiary to the DIP Credit Agreement, Electrolux is entitled to enforce the terms of the DIP including but not limited to payment to Electrolux in compliance with the budget and the exclusion of the Electrolux consignment inventory and proceeds from the lenders' liens and security interests under the Credit Agreements.

**RESPONSE TO ALLEGATION NO. 117:**

Debtors state that the allegations of paragraph 137 contain contentions of law for which no

response is required; to the extent a response is required, Debtors deny the allegations in

paragraph 137.

**THIRTEENTH CAUSE OF ACTION**
**(Waiver)**

**ALLEGATION NO. 118:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein, including but not limited to the provisions in the Credit Agreements regarding Electrolux's consignment inventory and proceeds, and the Electrolux Consignment Agreement.

**RESPONSE TO ALLEGATION NO. 118:**

Debtors repeat and re-allege their responses to paragraphs 1-137.

**ALLEGATION NO. 119:**

Wells Fargo has waived any rights to any interest in Electrolux' consignment inventory and proceeds thereof.

**RESPONSE TO ALLEGATION NO. 119:**

Debtors state that the allegations of paragraph 139 contain contentions of law for which no

response is required; to the extent a response is required, Debtors deny the allegations in

paragraph 139.

**FOURTEENTH CAUSE OF ACTION**
**(Reclamation)**

**ALLEGATION NO. 120:**

Electrolux repeats and incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

**RESPONSE TO ALLEGATION NO. 120:**

Debtors repeat and re-allege their responses to paragraphs 1-139.

**ALLEGATION NO. 121:**

In the alternative and reserving all its rights regarding all causes of action herein, Electrolux hereby pleads its reclamation rights.

**RESPONSE TO ALLEGATION NO. 121:**

Debtors state that paragraph 141 contains characterizations of Electrolux's reclamation claim to

which no responses is required.  Debtors deny that Electrolux is entitled to any relief.

**ALLEGATION NO. 122:**

Within 45 days immediately before the Petition Date, Debtors received certain goods that Electrolux delivered to Debtors (the "Reclaimed Goods").

**RESPONSE TO ALLEGATION NO. 122:**

Debtors admit that Gregg received goods from Electrolux within 45 days immediately prior to

the Petition Date.

**ALLEGATION NO. 123:**

On March 24, 2017, Electrolux sent a written demand for reclamation to Debtors demanding the return of the Reclaimed Goods (the "Demand"). A copy of the Demand is attached as Exhibit B. The Reclaimed Goods have an aggregate value of not less than $9,344,781.39.

**RESPONSE TO ALLEGATION NO. 123:**

Debtors admit that Exhibit B to the Amended Complaint is a true and correct copy of the

Demand sent by Electrolux.  Debtors further state that the Demand speaks for itself and Debtors

deny any allegations in paragraph 143 to the extent they do not fully and accurately characterize

41

the content of the Demand or otherwise seek to characterize the purpose of any given provision

of the Demand. Debtors deny the remaining allegations in paragraph 143.

## ALLEGATION NO. 124:

Debtors are parties to an Amended and Restated Loan and Security Agreement dated March 29, 2011, as amended (the "Prepetition Credit Agreement"), as more fully set forth in Debtors' *Motion for Interim and Final Orders (I) Authorizing Debtor in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, 364; (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507; (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and Local Rule 4001-2* (the "DIP Motion") [Dkt. No. 18]. (See e.g., Dkt. No. 18 ¶¶ 6-8.)

## RESPONSE TO ALLEGATION NO. 124:

Debtors admit that Gregg (as Borrower) and HHG Distributing, LLC (as Guarantor) are parties

to that certain Amended and Restated Loan and Security Agreement dated as of March 29, 2011

(the "Prepetition Credit Agreement").

## ALLEGATION NO. 125:

Wells is the Administrative Agent, Collateral Agent, and FILO Agent under the Prepetition Credit Agreement.

## RESPONSE TO ALLEGATION NO. 125:

Debtors admit that Wells Fargo is party to the Prepetition Credit Agreement as the

Administrative Agent and the Collateral Agent; the remaining allegations in Paragraph 145 are

denied.

## ALLEGATION NO. 126:

Under the Prepetition Credit Agreement, Debtors granted Wells a security interest in and lien upon all "Collateral" as defined in the Prepetition Credit Agreement, which includes Debtors' inventory and the Reclaimed Goods (*Id.* ¶ 8.)

**RESPONSE TO ALLEGATION NO. 126:**

Debtors state that the Prepetition Credit Agreement speaks for itself and Debtors deny any allegations in paragraph 146 to the extent they do not fully and accurately characterize the content of the Prepetition Credit Agreement or otherwise seek to characterize the purpose of any given provision of the Prepetition Credit Agreement.

**ALLEGATION NO. 127:**

Upon information and belief, Wells was fully informed and aware of Debtors' financial condition in the months leading up to the Petition Date.

**RESPONSE TO ALLEGATION NO. 127:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 147; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 147.

**ALLEGATION NO. 128:**

Upon information and belief, Debtors were insolvent at least as of 45 days prior to the Petition Date.

**RESPONSE TO ALLEGATION NO. 128:**

Debtors state that the allegations of paragraph 148 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 148.

**ALLEGATION NO. 129:**

Upon information and belief, Wells was aware that Debtors were insolvent 45 days prior to the Petition Date and at the time that Debtors received the Reclaimed Goods.

**RESPONSE TO ALLEGATION NO. 129:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

149; therefore, to the extent a response is required, Debtors deny the allegations in paragraph

149.

**ALLEGATION NO. 130:**

Upon information and belief, Wells was aware that Debtors could not and would not pay

Electrolux for all the Reclaimed Goods at the time Debtors received them.

**RESPONSE TO ALLEGATION NO. 130:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

150; therefore, to the extent a response is required, Debtors deny the allegations in paragraph

150.

**ALLEGATION NO. 131:**

Upon information and belief, Wells obtained the benefit of the Reclaimed Goods, knowing that
Debtors would not pay Electrolux to either secure extensions of credit under the Prepetition
Credit Agreement or utilize the proceeds of the Electrolux Consigned Inventory, including the
Reclaimed Goods, to allow the Debtors to continue to operate in the ordinary course.

**RESPONSE TO ALLEGATION NO. 131:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

151; therefore, to the extent a response is required, Debtors deny the allegations in paragraph

151.

**ALLEGATION NO. 132:**

Upon information and belief, Wells financed Debtors' continued operations in order to
perpetuate Debtors as the best vehicle to orderly liquidate Wells' collateral and maximize Wells'
recovery.

**RESPONSE TO ALLEGATION NO. 132:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

152; therefore, to the extent a response is required, Debtors deny the allegations in paragraph

152.

**ALLEGATION NO. 133:**

As set forth in the DIP Motion and the order granting the DIP Motion on an interim basis
("Interim DIP Order") [Dkt. No. 50], a DIP financing agreement was approved on an interim
basis (the "DIP Financing Agreement") [Dkt. No. 18 at Ex B (DIP Financing Agreement)].

**RESPONSE TO ALLEGATION NO. 133:**

Admitted.

**ALLEGATION NO. 134:**

Electrolux filed an Objection to the DIP Motion, objecting to approval of the DIP Motion on a
final basis, and a Supplemental Objection for the reasons stated in such Objection [Dkt. No. 269
and 549.]

**RESPONSE TO ALLEGATION NO. 134:**

Admitted.

**ALLEGATION NO. 135:**

To date, Debtors continue to sell the Reclaimed Goods despite Electrolux's timely Demand. The
amount of Reclaimed Goods that remain in Debtors' possession as of the petition date is
$9,344,781.39 and continues to be irreparably harmed, as a result of the sale of the Reclaimed
Goods without paying the Obligations owed to Electrolux as set forth above.

**RESPONSE TO ALLEGATION NO. 135:**

Debtors admit that they continue to sell Electrolux inventory.  The remaining allegations of

paragraph 155 are denied.

**ALLEGATION NO. 136:**

Electrolux's right to recover actual possession of the Reclaimed Goods is a possessory right that
is not compensable through a money judgment and as a result, Electrolux will suffer irreparable
harm if the Reclaimed Goods are not returned to Electrolux.

**RESPONSE TO ALLEGATION NO. 136:**

Denied.

**ALLEGATION NO. 137:**

Upon information and belief, Wells is not, within the meaning of § 2-702 of the Uniform Commercial Code, a good faith purchaser or buyer in the ordinary course and, as such, does not have a priming lien with respect to Electrolux's reclamation claim in the Reclaimed Goods or proceeds from the Reclaimed Goods under Bankruptcy Code § 546(c).

**RESPONSE TO ALLEGATION NO. 137:**

Debtors state that the allegations of paragraph 157 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 157.

**ALLEGATION NO. 138:**

As a result, Electrolux's right to the Reclaimed Goods and proceeds of the Reclaimed Goods is not subject to Lenders' lien in the Reclaimed Goods.

**RESPONSE TO ALLEGATION NO. 138:**

Debtors state that the allegations of paragraph 158 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 158.

**ALLEGATION NO. 139:**

In addition, the Financing Motion and Interim Order provide that all cash, collections, and proceeds of the Pre-Petition Collateral and DIP Collateral are to be paid to the Pre-Petition Agent for application in reduction of the Pre-Petition Credit Agreement Loans and that upon entry of the Final Order, the Debtors will apply proceeds of the DIP Credit Agreement to pay all remaining Pre-Petition Secured Debt in full (the "Roll-Up").

**RESPONSE TO ALLEGATION NO. 139:**

Debtors state that the Financing Motion and Interim Order speak for themselves and Debtors deny any allegations in paragraph 159 to the extent they do not fully and accurately characterize

the content of the Financing Motion and Interim Order or otherwise seek to characterize the purpose of any given provision of the Financing Motion and Interim Order.

## ALLEGATION NO. 140:

Even if Wells qualifies as a good faith purchaser, to the extent loans under the Pre-Petition Credit Agreement have been "rolled-up," Electrolux's reclamation claim is first in priority and right. *In re Reichhold Holdings US, Inc.*, 556 B.R. 107 (Bankr. D. Del. 2016).

## RESPONSE TO ALLEGATION NO. 140:

Debtors state that the allegations of paragraph 160 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 160.

## ALLEGATION NO. 141:

Electrolux is entitled to immediate possession of the Reclaimed Goods from Debtor under Bankruptcy Code § 546(c).

## RESPONSE TO ALLEGATION NO. 141:

Debtors state that the allegations of paragraph 161 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 161.

## ALLEGATION NO. 142:

Electrolux has a reclamation right to the Reclaimed Goods based on Electrolux's Demand, as well as a first priority lien in the Reclaimed Goods and proceeds from Debtors' sale of the Reclaimed Goods.

## RESPONSE TO ALLEGATION NO. 142:

Debtors state that the allegations of paragraph 162 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 162.

**ALLEGATION NO. 143:**

The lenders' purported first priority lien under the Pre-Petition Credit Agreement and DIP Financing Agreement is subordinate to Electrolux because lenders are not buyers in the ordinary course, good faith purchasers, or otherwise entitled to a first priority lien under 2-702 of the Uniform Commercial Code or Bankruptcy § 546(c).

**RESPONSE TO ALLEGATION NO. 143:**

Debtors state that the allegations of paragraph 163 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 163.

**ALLEGATION NO. 144:**

Debtors' have not honored Electrolux's Demand, continues [sic] to sell the Reclaimed Goods, and has [sic] not paid the proceeds to Electrolux.

**RESPONSE TO ALLEGATION NO. 144:**

Debtors admit that they continue to sell Electrolux inventory and that they have not paid any amount to Electrolux since the Petition Date.   Debtors deny the remaining allegations of paragraph 164.

To the extent that the "Wherefore" clauses following paragraph 164 of the Amended Complaint must be answered, Debtors deny that Electrolux is entitled to the relief requested or to any relief whatsoever.

**SPECIFIC DEFENSES**

1.      Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiff's claims must be denied because Article 9 of the Uniform Commercial Code exclusively governs the relationship between Debtors and Electrolux.

3.      Plaintiff's claims must be denied to the extent its damages are the result of its own conduct or another party's actions, omissions and/or course of conduct.

4.     Plaintiff's claims are barred because Debtors are not obligated to comply with the terms of the Consignment Agreement after the bankruptcy filing.

5.     Plaintiff's claims are barred because Debtors complied with the terms of the Consignment Agreement.

6.     Plaintiff's claims are barred because all damages claimed are the result of intervening or superseding causes.

7.     Plaintiff's claims are barred by the doctrines of waiver and estoppel.

8.     Plaintiff's claims are barred because Plaintiff would be unjustly enriched if it would be allowed to recover any part of the damages alleged in the Amended Complaint.

9.     Plaintiff's claims pursuant to the Consignment Agreement are general unsecured prepetition claims.

10.     Plaintiff's reclamation claims are barred by section 2-702(2) of the Uniform Commercial Code because notice was not timely given. .

11.     Plaintiff's claims must be denied pursuant to 11 U.S.C. § 502(d).

12.     The Amended Complaint or any relief sought by Plaintiff is barred, in whole or in part, by such additional defenses as Debtors may have that cannot now be articulated due to the generality of Plaintiff's pleading.  Debtors reserve the right to supplement the foregoing and to raise additional defenses as the case progresses.

WHEREFORE, Debtors pray that Plaintiff's Amended Complaint be dismissed with prejudice and that Debtors be awarded their costs, attorney's fees, and such relief as the Court deems just and proper.

## DEBTORS' COUNTERCLAIM

Debtors file this Counterclaim against Electrolux.  In support thereof, Debtors state as follows:

### PARTIES

1.      Counterclaim Plaintiffs hhgregg, HHG Distributing, and Gregg Appliances (Debtors) are organized under the laws of the State of Indiana.

2.      On information and belief, Counterclaim Defendant Electrolux is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

### JURISDICTION

3.      This Court has exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and 1334.

4.      Venue is proper pursuant to 28 U.S.C. §1409(a).

5.      This Counterclaim is brought pursuant to Rules 7001 and 7013 of the Federal Rules of Bankruptcy Procedure.

6.      The matters set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2).

### FACTUAL ALLEGATIONS

7.      The Debtors are a multi-regional retailer that provides an extensive selection of premium appliances, consumer electronics, home products and computers and tablets in 220 brick-and-mortar stores in 19 states and online via hhgregg.com.

8.      The Debtors sell appliances, consumer electronics and other products under the hhgregg name.

9.      The Debtors are not auctioneers.

10.     On March 6, 2017 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

11.     The Debtors continue to operate their business and manage their properties as debtors in possession.

12.     The Debtors are in the process of closing certain under-performing stores and holding going out of business sales at certain of their retail locations.

**Consignment Agreement**

13.     On March 11, 2011, Electrolux entered into a Consignment Agreement with Debtor Gregg Appliances (the "Consignment Agreement"). [2]

14.     The Consignment Agreement contains a choice of law provision stating that the laws of North Carolina exclusively govern the Consignment Agreement.

15.     Pursuant to the Consignment Agreement, Electrolux delivered certain branded appliances to Debtors' stores and distribution centers for sale as consigned goods (the "Electrolux Inventory").

16.     Pursuant to the Consignment Agreement, Debtors had the right to return the Electrolux Inventory to Electrolux.

17.     In the ordinary course of the Debtors' business, Electrolux was one of only two suppliers that provided inventory to the Debtors pursuant to a consignment contract.

18.     On average, over the past year, less than 6% of the Debtors' total inventory consisted of goods provided to the Debtors pursuant to a consignment contract.

---

[2] A copy of the Consignment Agreement is attached to the Verified Complaint as Exhibit A.

19.     The rest of the Debtors' inventory, on average over 94%, was purchased by the Debtors from suppliers for resale and not acquired by the Debtors pursuant to consignment contracts.

20.     The vast majority of the Debtors' consigned inventory consisted of Electrolux products, which, on average over the past year, represented slightly in excess of 5% of the Debtors' total inventory, valued at cost.

21.     The Debtors have continued to sell Electorlux Inventory since the Petition Date

22.     Over 99% of the products delivered to the Debtors by Electrolux in the past year were delivered in shipments with aggregate values in excess of $1,000.

23.     Paragraph 5 of the Consignment Agreement provides as follows:

> In order to secure Consignor with respect to the Consigned Merchandise, any and all monies due to the Consignor herein, the Consignee and its officers and directors agree to execute all documents reasonable required by Consignor and to execute and/or permit to be filed any and all such documents (including UCC-1 Financing Statements) reasonably necessary to be filed in order to perfect the Consignor's ownership interest in the Consigned Merchandise and the proceeds thereof.

24.     On December 19, 2001, Plaintiff filed a UCC-1 Financing Statement with respect to Gregg Appliances which purports to cover all inventory delivered to Gregg Appliances pursuant to the Consignment Agreement (the "Initial Financing Statement").

25.     On June 22, 2006 and July 19, 2011, Plaintiff filed continuation statements that purport to continue the effectiveness of the Initial Financing Statement.

26.     Plaintiff failed to file a continuation statement with respect to the Initial Financing Statement after July 19, 2011.  Accordingly, the Initial Financing Statement expired and was terminated as of December 19, 2016.

27.    Due to its expiration, the Initial Financing Statement cannot be relied upon by Electrolux to assert a perfected lien over any of the Electrolux Inventory, regardless of when it was delivered.

28.    Plaintiff filed a new original financing statement (the "Second Financing Statement") on March 2, 2017.

29.    Within 90-days prior to the Petition Date, Debtors made payments of $26,452,595 to Electrolux on account of amounts due to Electrolux under the Consignment Agreement.

**Vendor Support Program**

30.    In the ordinary course of their business, the Debtors enter into various support agreements with their vendors pursuant to which the vendors would offer rebates and cash incentives to the Debtors.

31.    The Debtors and Electrolux entered into vendor support agreements effective January 1, 2016 and January 1, 2017 (the "Vendor Support Agreements"). True and correct copies of the 2016 and 2017 Vendor Support Agreements are attached hereto as Exhibit A.

32.    Pursuant to the Vendor Support Agreements, Electrolux agreed to make certain support payments to Debtor to "demonstrate the strong level of commitment that continues for hh gregg from Electrolux."

33.    Support payments made pursuant to the Vendor Support Agreements are calculated as a percentage of, among other things, net consignment deliveries made by Debtor. The Vendor Support Agreements also provide for payment of a 1% damage credit for goods that are delivered and determined to be damaged.

34.    In the ordinary course of  business prior to the Petition Date, Electrolux would pay amounts due under the Vendor Support Agreements to the Debtors

35.     To date, approximately $1,767,566.75 in amounts have accrued as owing to the Debtors by Electrolux pursuant to the Vendor Support Agreements that have not been paid by Electrolux.     Going forward, as Electrolux inventory continues to be sold by the Debtors, additional payments will come due to the Debtors from Electrolux pursuant to the Vendor Support Agreements.

**Count I**
**Declaratory Judgment**

36.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

37.     28 U.S.C. § 2201 provides, in pertinent part, that:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

38.     Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. §105(a), this Court has the power to declare and adjudicate the rights and obligations of the parties hereto and to grant such other and further relief as may be necessary to enforce the rights and obligations pursuant to the applicable contracts.

39.     Substantial and actual controversies exist between the Debtors and Electrolux as to whether Article 9 of the Uniform Commercial Code governs the consignment relationship between Debtors and Electrolux, whether Electrolux can assert an ownership interest in the Electrolux Inventory without reliance on Article 9 and whether the Debtors interest in the Electrolux Inventory is superior to the interest of Electrolux.

40.     North Carolina has adopted the Uniform Commercial Code ("UCC").

41.     Where an agreement between two parties meets the definition of "consignment," that agreement is governed by UCC Article 9.

42.     Section 9-102(20) of the UCC defines "consignment" as follows:

"Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

(a) the merchant:

> (1) deals in goods of that kind under a name other than the name of the person making delivery;
>
> (2) is not an auctioneer; and
>
> (3) is not generally known by its creditors to be substantially engaged in selling the goods of others;

(b) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

(c) the goods are not consumer goods immediately before delivery; and

(d) the transaction does not create a security interest that secures an obligation.

43.     The commercial relationship between the Debtors and Electrolux meets the definition of "consignment" under section UCC Article 9.

44.     Section 9-103(d) of the UCC provides that the "security interest of a consignor in goods that are the subject of a consignment is a purchase-money security interest in inventory."

45.     As a consignor of goods, Electrolux had a purchase money security interest in the Electrolux Inventory.  Electrolux was required to perfect that security interest in order to assert priority over third parties asserting an interest in the inventory.

46.     Section 9-324(b) of the UCC provides that a "perfected purchase-money security interest in inventory has priority over a conflicting security interest in the same inventory . . . if . . . The purchase-money security interest is perfected when the debtor receives possession of the inventory . . . ."

47.     Electrolux perfected its purchase money security interest in the Electrolux Inventory by filing a UCC-1 Financing Statement on December 19, 2001 and by filing continuation statements on June 22, 2006 and July 19, 2011.

48.     Electrolux failed to file a continuation statement after July 19, 2011.

49.     Pursuant to the UCC, having failed to file a continuation statement after July 19, 2011, the Initial Financing Statement expired on December 19, 2016.

50.     Section 9-515 of the UCC provides that, "Upon lapse, a financing statement ceases to be effective and any security interest . . . that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise."

51.     The expiration of the Initial Financing Statement on December 19, 2016 rendered Electrolux unperfected in Electrolux Inventory that might otherwise have been covered by the lapsed financing statement.

52.     Electrolux filed the Second Financing Statement on March 2, 2017; however, any lien perfected by this Second Financing Statement is avoidable by the Debtors pursuant to 11 U.S.C. § 547.

53.     Section 9-319(a) of the UCC provides that unless a consignor's ownership interest is perfected, "while goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had the power to transfer."

54.     Electrolux has admitted that it has no lien in any of the Debtors' assets.  See Complaint ¶

55.     Section 9-317(a)(2) of the UCC provides that an unperfected security interest is subordinate to the rights of a lien creditor.

56.     As a hypothetical lien creditor pursuant to 11 U.S.C. § 544, Debtors' interest in Electrolux Inventory is superior to Electrolux's interest to the extent that it is not perfected.

57.     Debtors seek an order from this court declaring:

    a.  That the consignment relationship between Debtors and Electrolux is governed by Article 9 of the Uniform Commercial Code; and

    b.  That to the extent Electrolux does not have a perfected security interest in the Electrolux Inventory, Electrolux cannot assert rights superior to Debtors' rights in the Electrolux Inventory.

## Count II
### Breach of Contract

58.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

59.     The Vendor Support Agreements are valid contracts between Electrolux and the Debtors.

60.     Electrolux has failed to fully perform under the Vendor Support Agreements by failing to make $1,767,566.75 in payments owed to Debtor hhgregg pursuant to the Vendor Support Agreements.

61.     As additional Electrolux inventory is sold by the Debtors, amounts will continue to accrue pursuant to the Vendor Support Agreements.

62.     Debtors has been damaged and will be damaged by Elecrolux's failure to make the contractually obligated payments pursuant to the Vendor Support Agreements.

## Count III
### Avoidance and Recovery of Preference - Prepetition Payments

63.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

64.     Within 90-days prior to the Petition Date, Debtors made payments of approximately $26,452,595 to Electrolux on account of amounts due to Electrolux under the Consignment Agreement (the "Prepetition Payments").

65.     The Prepetition Payments were made for the benefit of Electrolux.

66.     The Prepetition Payments were made on account of an antecedent debt owed by the Debtors to Electrolux.

67.     The Prepetition Payments were made while Debtors were insolvent.

68.     The Prepetition Payments were made on or within 90 days before the Petition Date.

69.     As a result of the Prepetition Payments, Electrolux received more than it would have received if (a) the Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the Prepetition Payments had not been made; and (c) Electrolux had received payment on such debt owed to it by Debtors to the extent provided by the Bankruptcy Code.

70.     Debtors are entitled to avoid the Prepetition Payments under Section 547(b) of the Bankruptcy Code, and to recover the proceeds or the value of the Prepetition Payments under Section 550(a)(1) of the Bankruptcy Code.

**Count IV**
**Avoidance of Lien**

71.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

72.     Electrolux attempted to perfect its security interest in the Electrolux Inventory when it filed the Second Financing Statement.

73.     To the extent that the Second Financing Statement was effective to perfect a security interest, such perfection would have transferred to Electrolux an interest in the

Electrolux Inventory, which inventory otherwise belonged to the Debtor pursuant to the provisions of Article 9 of the Uniform Commercial Code.

74.     Such interest, in the form of a lien, would have been received by Electrolux on account of an obligation owed by Debtors to Electrolux under the Consignment Agreement.

75.     Such lien would have been received while Debtors were insolvent.

76.     Such lien would have been received on or within 90 days before the Petition Date.

77.     As a result of such lien, to the extent it was properly perfected, Electrolux would receive more than it would have received if (a) the Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the lien had not been perfected; and (c) Electrolux had received payment on such debt owed to it by Debtors to the extent provided by the Bankruptcy Code.

78.     The Debtors are entitled to an order and judgment under section 547(b) of the Bankruptcy Code avoiding any lien perfected by the Second Financing Statement.

### Count V
### Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)

79.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

80.     Electrolux has asserted certain claims against Debtors in the Amended Complaint.

81.     Pursuant to Section 502(d) of the Bankruptcy Code, Debtors request that the claims asserted by Electrolux against Debtors be disallowed for Electrolux's failure to pay the value of the Prepetition Payments, upon determination that such value is recoverable under section 550 of the Bankruptcy Code.

### RESERVATION OF RIGHTS

Debtors hereby reserve all of their rights against Electrolux or any other party under the Bankruptcy Code and applicable law, including, but not limited to, the right to amend or

supplement this Answer and Counterclaim as allowable under applicable law and the orders of this Court, and to assert further motions for relief, responses, replies, counterclaims, and/or defenses or affirmative defenses as the evidence may allow or that may be determined through pre-trial discovery.

## **PRAYER**

Debtors respectfully request that this Court enter judgment against Electrolux in favor of Debtors for the following relief:

1.      A declaration that the consignment relationship between Debtors and Electrolux is governed by Article 9 of the Uniform Commercial Code;

2.      A declaration that to the extent Electrolux does not have a perfected security interest in the Electrolux Inventory, Electrolux cannot assert rights against the Electrolux Inventory superior to Debtors' rights;

3.      Awarding judgment against Electrolux and in favor of Debtors in the full amount of all monies due from Electrolux to the Debtors under the Vendor Support Agreements;

4.      Awarding judgment that the Prepetition Payments identified herein are avoided and set aside as preferences under Section 547(b) of the Bankruptcy Code;

5.      Awarding judgment that any lien perfected by the Second Financing Statement is avoided and set aside as a preference under Section 547(b) of the Bankruptcy Code;

6.      Awarding judgment directing and ordering that Electrolux turn over to Debtors the full sum of the Prepetition Payments pursuant to Section 550(a)(1) of the Bankruptcy Code;

7.      Disallowing any and all claims of Electrolux against Debtors under section 502(d) of the Bankruptcy Code;

8.      Reasonable and necessary attorneys' fees incurred in connection with this litigation;

9.      Costs of court and other recoverable expenses;

10.     Pre-judgment and post-judgment interest;

11.     Such other relief to which Debtors may be justly entitled.


Dated:  April 27, 2017


Respectfully Submitted,

*/s/ Adam Arceneaux*
_____

**ICE MILLER LLP**                                    -and-
Jeffrey A. Hokanson (No. 14579-49)
Adam Arceneaux (No. 17219-49)          Neil. E. Herman (admitted *pro hac vice*)
Sarah L. Fowler (No. 30621-49)            **MORGAN, LEWIS & BOCKIUS LLP**
One American Square, Suite 2900          101 Park Avenue
Indianapolis, IN 46282-0200               New York, NY 100178-0060
Telephone  (317) 236-2100                 Telephone:  (212) 309-6000
Jeff.Hokanson@icemiller.com               neil.herman@morganlewis.com
Adam.Arceneaux@icemiller.com
Sarah.Fowler@icemiller.com                -and-

*Counsel to hhgregg, Inc., HHG Distributing*   Andrew J. Gallo (admitted *pro hac vice*)
*LLC, and Gregg Applicances, Inc.*             **MORGAN, LEWIS & BOCKIUS LLP**
                                          One Federal Street
                                          Boston, MA 02110
                                          Telephone:  (617) 8521-8117
                                          andrew.gallo@morganlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| Stephen B. Grow | sgrow@wnj.com |
| Robert M. Azzi | razzi@wnj.com |
| Mark D. Cahill | mcahill@choate.com |
| Terry E. Hall | terry.hall@faegrebd.com |
| Jay Jaffee | jay.jaffe@faegrebd.com |
| Sean Monahan | smonahan@choate.com |
| John Ventola | jventola@choate.com |
| Jeffrey A. Hokanson | jeff.hokanson@icemiller.com |
| Sarah L. Fowler | sarah.fowler@icemiller.com |
| United States Trustee | ustpregion10.in.ecf@usdoj.gov |

I further certify that on April 27, 2017, a copy of the foregoing was mailed by first class U.S. Mail, postage prepaid, and properly addressed to the following:

N/A

/s/ Adam Arceneaux
Adam Arceneaux